## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Heather Rudy, individually and on behalf of all others similarly situated, | 1:21-cv-03938 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| D F Stauffer Biscuit Co Inc, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    D F Stauffer Biscuit Co Inc ("defendant") manufactures, labels, markets, and sells "Lemon Snaps," which are flat, brittle drop cookies, purporting to be flavored from lemons ("Product").

2.    Market data confirms the increased popularity of lemons, as their price and average consumption has risen consistently over the past three decades relative to other fruits.

3.    Reasons for consumers elevating lemons above other fruits include taste, texture, health benefits and adaptability.

4.    Consumers increasingly seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients associated with positive health benefits.

5.    The relevant representations include "Lemon Snaps" on a yellow background, "Original Recipe," "Quality Since 1871," and pictures of the cookies next to freshly picked lemons.

 

6.      Consumers including Plaintiff expected the Product to contain a non-de minimis amount of lemon ingredients based on the representations.

7.      This state's regulations, identical to those of the Food and Drug Administration ("FDA"), require a company to tell consumers the source of a food's flavor. 21 C.F.R. § 101.22(i).

8.      "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."

9.      Since consumers are accustomed to foods which seem to all say "naturally flavored" or "artificially flavored," they will expect the unqualified "Lemon Snaps" with pictures of lemons, contains lemon ingredients.

10.     The ingredient list in the fine print on the back reveals the Product contains no appreciable amount of lemon, as it lists "Natural and Artificial Flavors."

2

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE [VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), SUGAR, PALM OIL, HIGH FRUCTOSE CORN SYRUP, BAKING SODA (FOR LEAVENING), NATURAL AND ARTIFICIAL FLAVOR, SALT, SOY LECITHIN (AN EMULSIFER), CITRIC ACID, FD&C YELLOW #5.

11.    According to flavor expert Bob Holmes, "If you were getting all the flavor depth of the lemon [or raspberry] itself, the label would likely read 'lemon juice' or 'lemon oil,' not 'natural lemon flavor [or artificial flavor].'"

12.    "Natural and Artificial Flavor" refers to a mix of natural and synthetic source material that is combined in a laboratory, through toxic solvents, containing additives.

13.    The Product's "Natural and Artificial Flavor" consists of flavor compounds which imitate the taste provided by real lemons, but with a de minimis amount of lemon, if any.

## I.    PRODUCT LACKS LEMON TASTE

14.    Lemons gets their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and ketones.

3

15.     The main lemon flavor compounds are limonene and citral, which provide a sour taste.

16.     However, lemons contain a range of compounds which provide its characteristic "woody" and "piney" notes, such as beta-pinene, beta-myrcene and γ-terpinene.

17.     Lab analysis confirms or would confirm the Product has a de minimis amount of lemon, if any, and the "lemon" taste is mainly from synthetic citral, derived from the petrochemical industry, without the range of compounds essential to a lemon's taste.

## II.     LEMON SNAPS WITHOUT REAL LEMON ARE UNABLE TO PROVIDE ANY HEALTH BENEFITS

18.     Lemons are valued by consumers for their ability to provide health benefits.

19.     Lemons have uniquely high levels of antioxidants known as polyphenols.

20.     Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

21.     Lemons are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

22.     The cost of using more real lemon ingredients would be approximately $0.11 per 5 OZ (1 container), a negligible price increase which would not affect Defendant's profit margins.

23.     Snacks with an appreciable amount of real lemon are not a rare or pricey delicacy such that it is unreasonable to expect this.

24.     The Product is unable to confer any health benefits because it has less lemon ingredients than it purports to.

## III.    FOOD COLORING – FALSE IMPRESSION OF MORE LEMONS

25.     The Product contains FD&C YELLOW #5, a food coloring, derived from petroleum.

26.     This added coloring makes the Product look more yellow, closer to real lemons.

27.    Consumers are misled to expect the Product has more lemon ingredients than it does.

28.    Artificial food dyes are an easy way for "manufacturers to make processed foods brighter and more appealing when you see it on a shelf in the grocery store."

29.    According to one website, "Artificial dyes are also used to help hide the fact that many processed foods don't contain much (or any) of the nutrients or foods they claim to have."

30.    Without YELLOW #5, consumers would be suspect of a product labeled as "LEMON," with pictures of fresh lemons, because the Product images would not appear yellow.

31.    This could cause consumers to inspect the ingredient list to determine the truth.

32.    However, reasonable consumers are not so distrustful to think they will be misled when buying a well-known product like defendant's Lemon Snaps.

33.    Though YELLOW #5 is approved by the FDA, it is banned in other countries due to health concerns and is linked to learning disorders and hyperactivity in children.

## IV.    CONCLUSION

34.    Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of their products.

35.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

36.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

37.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

38.    The Product is sold for a price premium compared to other similar products, approximately than $2.49 per 14 OZ, a higher price than it would otherwise be sold for, absent the

misleading representations and omissions.

Jurisdiction and Venue

39. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

40. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

41. Plaintiff Heather Rudy is a citizen of Illinois.

42. Defendant D F Stauffer Biscuit Co Inc is a Pennsylvania corporation with a principal place of business in York, York County, Pennsylvania.

43. The parties are citizens of different states.

44. Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

Parties

45. Plaintiff Heather Rudy is a citizen of Gurnee, Lake County, Illinois.

46. Defendant D F Stauffer Biscuit Co Inc, is a Pennsylvania corporation with a principal place of business in York, Pennsylvania, York County.

47. Defendant is one of the most well-known manufacturers of snacks and cookies in the United States.

48. The Product is sold to consumers from retail and online stores of third-parties in sizes including 14 OZ.

49. Plaintiff would not have purchased the Product, or would have paid less for it, if she knew the truth.

50. During the relevant statutes of limitations, plaintiff purchased the Product within her

6

district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

51.    Plaintiff purchased the Product on one or more occasions, during the relevant period, at stores including but not necessarily limited to, Walmart, 6590 Grand Ave, Gurnee, IL 60031, in 2020, among other times.

52.    Plaintiff bought the Product at or exceeding the above-referenced prices because she wanted a product with an appreciable amount of lemon ingredients.

53.    Plaintiff desired more than a taste of lemons but the benefits of consuming lemon ingredients, and she received neither.

54.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly.

55.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

56.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

57.    The class will consist of all Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

58.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

59.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

60.    Plaintiff is an adequate representative because her interests do not conflict with other

members.

61.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

62.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

63.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

65.     Plaintiff incorporates by reference all preceding paragraphs.

66.     Plaintiff and class members desired to purchase a Product had an appreciable amount of lemon ingredients.

67.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

68.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

69.     Plaintiff relied on the representations.

70.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

71.     The Product was manufactured, marketed, and sold by defendant and expressly and

impliedly warranted to plaintiff and class members that it had an appreciable amount of lemon ingredients.

72.    Defendant had a duty to disclose and/or provide non-deceptive descriptions, and marketing of the Product.

73.    This duty is based on Defendant's outsized role in the market for this type of Product.

74.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

75.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

76.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

77.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

78.    Defendant had a duty to truthfully represent the Product, which it breached.

79.    This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

80.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

81.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

82.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had an appreciable amount of lemon ingredients.

84.     Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

85.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 24, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com