**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER RUDY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 21-cv-03938 |
| v. | ) ) | Judge Andrea R. Wood |
| D.F. STAUFFER BISCUIT CO., INC., | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Heather Rudy purchased a box of Lemon Snaps, lemon-flavored cookies manufactured and sold by Defendant D.F. Stauffer Biscuit Co., Inc. ("Stauffer"). Expecting the flavor and health benefits of real lemons from the cookies, Rudy found that they did not contain the amount of actual lemon that she expected. So she has sued Stauffer on behalf of herself and a putative class of Illinois residents, asserting federal and state law claims against Stauffer based on its alleged misrepresentations regarding the amount of lemon in its product. Stauffer has filed a motion to transfer the case to the Southern District of New York (Dkt. No. 12), as well as a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claim (Dkt. No. 9). For the reasons stated below, Stauffer's motion to transfer is denied and its motion to dismiss is granted.

## BACKGROUND

For purposes of Stauffer's motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views them in the light most favorable to Rudy as the non-moving party. *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

As alleged in the complaint, Stauffer is a well-known manufacturer of snacks and cookies incorporated in Pennsylvania. (Compl. ¶¶ 46–47, Dkt. No. 1.) Relevant here, Stauffer manufactures, labels, markets, and sells "Lemon Snaps," a product described as flat, brittle drop cookies. (*Id.* ¶ 2.) The front packaging of the product displays the title "Lemon Snaps" on a yellow background with a picture of a stack of cookies and lemons. (*Id.* ¶ 5.) The front packaging reads "Original Recipe" and "Quality Since 1871." (*Id.*) On the back of the packaging is an ingredient label that includes "NATURAL AND ARTIFICIAL FLAVOR" as an ingredient. (*Id.* ¶ 10.) Lemon Snaps also contain "FD&C YELLOW #5" food coloring. (*Id.* ¶ 25.)

Rudy is a citizen of Illinois. (*Id.* ¶ 45.) She bought Lemon Snaps at a Wal-Mart store in Gurnee, Illinois on at least one occasion in 2020. (*Id.* ¶ 51.) She bought Lemon Snaps to obtain both the taste of real lemons and the benefits of consuming actual lemons. (*Id.* ¶ 53.) But she received neither, and she would not have paid as much as she did had she known that Lemon Snaps did not contain a sufficient amount of real lemon. (*Id.* ¶¶ 53, 55.) Rudy claims that consumers are misled by Stauffer's representations to expect that Lemon Snaps have a "non-*de minimis* amount of lemon ingredients," despite the fact that the cookies actually contain "no appreciable amount of lemon." (*Id.* ¶¶ 6, 10, 27.)

In her complaint, Rudy asserts various claims under state and federal law: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; (2) breaches of express warranty, implied warranty of merchantability, and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; (3) negligent misrepresentation; (4) fraud; and (5) unjust enrichment. She brings suit on behalf of herself and a putative class of "all Illinois residents who purchased [Lemon Snaps] during the statutes of limitations for each cause of action alleged." (*Id.* ¶ 57.) Rudy claims that, had she and the other class members known that

2

Lemons Snaps contained a *de minimis* amount of lemon, they would not have bought the product or would have paid less for it. (*Id.* ¶ 37.)

Rather than answer the complaint, Stauffer has filed two motions. The first motion seeks dismissal of the complaint for failure to state a claim. (Dkt. No. 9.) On the same day that it filed its motion to dismiss, Stauffer also filed a motion to transfer venue, invoking 28 U.S.C. § 1404(a) and the "first-to-file" rule. (Dkt. No. 11.) With the second motion, Stauffer asks the Court to transfer this case to the United States District Court for the Southern District of New York, where, at the time the motion was filed, an earlier-filed, nearly identical action was still pending. *See Cruz v. D.F. Stauffer Biscuit Co., Inc.*, No. 20-CV-02402 (S.D.N.Y.). However, as Stauffer has since notified the Court, *Cruz* has been dismissed. (*See* Dkt. No. 31.) Because there is no longer a pending earlier-filed related case, Stauffer's first-to-file argument is now moot. However, the Court will still consider whether to transfer the case to Southern District of New York under § 1404(a).

## DISCUSSION

### I.    Motion to Transfer Venue

Stauffer seeks to have this case transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), which provides that—even when venue is appropriate in the district where a case is currently pending—"a district court may transfer any civil action to any other district or division where it might have been brought" if certain factors weigh in favor of doing so. 28 U.S.C. § 1404(a). Those factors include whether "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Esposito v. Airbnb Action, LLC*, 538 F. Supp. 3d 844, 847 (N.D. Ill. 2020) (internal quotation marks omitted). As the party seeking transfer, Stauffer has "the burden

of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219; *see also Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (stating that the § 1404(a) analysis requires an "individualized, case-by-case consideration of convenience and fairness"). Because Rudy does not dispute that venue is proper both here and in the Southern District of New York, the Court need only focus on the remaining two § 1404(a) factors: the convenience of the parties and witnesses and the interest of justice.

## A.       Convenience of the Parties and Witnesses

With respect to the convenience of the parties and witnesses, courts consider: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Esposito*, 538 F. Supp. 3d at 847 (internal quotation marks omitted).

## 1.       Plaintiff's Choice of Forum

Rudy chose to bring this suit in the Northern District of Illinois and deference should generally be given to the plaintiff's choice of forum. *Nalco Co. v. Envtl. Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). That said, "the amount of deference courts give to the plaintiff's choice of forum lessens where the plaintiff's choice is not [her] home forum or bears little connection to the litigation." *Poole v. Saddler*, No. 13-CV-4984, 2014 WL 585306, at *6 (N.D. Ill. Feb. 14, 2014). But here, Rudy's choice of forum is her home forum, and the same is true for the members of the putative class. Moreover, Rudy alleges that she purchased the Lemon Snaps at

a Wal-Mart in Gurnee, Illinois, which is located in this District. Because of the connection between the plaintiffs and Northern District of Illinois, the Court gives deference to Rudy's choice of forum and that consideration weighs against transfer.

### 2. Situs of Material Events

"[T]he location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004). Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made. *See, e.g.*, *Preston v. Am. Honda Motor Co.*, No. 17 C 3549, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017); *U.S. ex rel. Heathcote Holdings Corp. v. Maybelline LLC*, No. 10 C 2544, 2011 WL 941350, at *6 (N.D. Ill. Mar. 15, 2011).

Stauffer is a Pennsylvania corporation. (Compl. ¶ 46.) Its principal place of business is in York, Pennsylvania. (*Id.*) Accordingly, its business decisions and activities likely take place in Pennsylvania. On the other hand, Rudy is a citizen of Illinois (*id.* ¶ 45), and the putative class consists of Illinois residents who purchased Lemon Snaps within the statute of limitations period for each cause of action alleged (*id.* ¶ 57). This suggests that Illinois is the situs—it is, after all, the location where all plaintiffs, named and putative, purchased the product in question. New York, however, is certainly not the situs of material events. There appears to be no connection between New York and this litigation other than the fact that Stauffer sells its products throughout the United States, including, presumably, to consumers in New York. (Compl. ¶ 47.) For these reasons, the situs of material events leans against transferring this case to the Southern District of New York.

### 3. Relative Ease of Access to Sources of Proof

The next factor—relative ease of access to sources of proof—does not weigh in favor of or against transfer. As none of the material events took place in New York, it is unlikely that any documents or sources of proof will be located there. Further, "in an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017) (internal quotation marks omitted). Stauffer's argument that discovery can proceed just as easily in the Southern District of New York as it can in any other district, does not weigh in favor of transfer; indeed, discovery can also proceed just as easily in the Northern District of Illinois as in any other district.

### 4. Convenience of the Witnesses

"The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In evaluating this factor, "the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Law Bull. Publ'g Co. v. LRP Pubs., Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998). Generally, the convenience of party witnesses is given less weight than that of nonparty witnesses. *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013). Nevertheless, the convenience of party witnesses is entitled to "some weight." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).

The witnesses' convenience weighs against transferring the instant matter. Though the number and identities of nonparty witnesses are unknown at this stage, it is safe to assume that most party and nonparty witnesses will be located in Illinois and Pennsylvania. After all, Pennsylvania is where Stauffer's executives likely have their offices, and Illinois is where Rudy and the class members reside. The current record provides no basis to conclude that any

witnesses—party or nonparty—are likely to be located in New York, where Stauffer seeks to transfer this matter.

### 5. Convenience to the Parties

As with the convenience of the witnesses, the convenience to the parties weighs against transfer. "[T]he moving party . . . has the burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Marshall v. Wexford Health Sources, Inc.*, No. 13 C 8678, 2014 WL 2536246, at *3 (N.D. Ill. June 5, 2014) (internal quotation marks omitted). Here, Stauffer requests transfer of this case to a venue where neither party is located. That would inconvenience Rudy, as she is located in Illinois. Further, Stauffer would still have to travel to a forum outside of Pennsylvania, where it is incorporated and conducts business. For these reasons, transferring this case to New York would provide no more convenience to either party.

### B. Interest of Justice

Several factors go into evaluating the interest of justice, "including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (internal quotation marks omitted). Particularly relevant to the Court's inquiry here is each court's familiarity with the relevant law. Given that Rudy asserts various state law claims governed by Illinois law, a judge in the Northern District of Illinois would likely have more familiarity with the relevant law than a judge sitting in the Southern District of New York. Illinois also has a greater stake in resolving the controversy because the

matter affects the community of consumers in Illinois. New York, on the other hand, has no connection with this litigation or the parties.

In light of the above factors, the Court concludes that transfer pursuant to § 1404(a) is not warranted. Illinois is a more appropriate venue for this case than New York. Accordingly, Stauffer's motion to transfer of venue is denied.

## II. Motion to Dismiss

The Court next turns to Stauffer's motion to dismiss. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of a Rule 12(b)(6) motion is not to decide the merits of the case; instead, it asks the Court to decide whether a complaint is sufficient to state a plausible legal claim. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Claims sounding in fraud are also subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b). This pleading standard requires a plaintiff's complaint to "state with particularity the circumstances constituting fraud." *Id.* Simply put, Rule 9(b) requires pleading "the who, what, when, where, and how" of the fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (internal quotation marks omitted). That

said, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### A. ICFA Claim

"The ICFA is 'a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). To state a claim under the ICFA, a plaintiff must allege that:

> (1) the defendant undertook a deceptive act or practice, (2) the defendant intended that the plaintiff rely on the deception, (3) the deception occurred in the course of trade or commerce, (4) actual damage to the plaintiff occurred, and (5) the damage complained of was proximately caused by the deception.

*Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018) (internal quotation marks omitted). "Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477–78 (7th Cir. 2020). Since Rudy alleges that Stauffer engaged in a deceptive practice (Compl. ¶ 67), the heightened pleading standards of Rule 9(b) applies to the ICFA claim.

A practice is deceptive if "it creates a likelihood of deception or has the capacity to deceive." *Bober*, 246 F.3d at 938. "Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson*, 944 F.3d at 646. Courts also view the alleged deceptive practice "in light of the totality of the information made available to the plaintiff." *Id.* (internal quotation

marks omitted). "What matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 477.

Rudy alleges that Stauffer made "false and deceptive representations" that "misrepresented [Lemon Snaps] through statements, omissions, ambiguities, half-truths, and/or actions." (Compl. ¶¶ 67–68.) As examples, Rudy points specifically to the Lemon Snaps's packaging, which displays the "Lemon Snaps" name, a yellow background, images of a stack of cookies and lemons, the phrases "Original Recipe" and "Quality Since 1871," and the ingredient label. (*Id.* ¶¶ 5, 10.) The complaint alleges that these representations caused Rudy and consumers in the putative class to expect Lemon Snaps to "contain a non-*de minimis* amount of lemon ingredients." (*Id.* ¶¶ 5–6.)

Contrary to Rudy's allegations, however, the representations on the Lemon Snaps packaging do not create a likelihood of deception or have the capacity to deceive consumers because a reasonable consumer would not interpret the packaging as implying that actual lemons are used in Lemon Snaps. Given the totality of information available to Rudy and putative class members, the package's representations are not misleading as a matter of law. *Bell*, 982 F.3d at 477 ("[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."); *see also Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021) ("[T]he allegedly deceptive [statement] must be looked upon in light of the totality of the information made available to the plaintiff.").

Viewing the representations on the packaging in their entirety, none of the text or images give any indication as to the amount of lemon ingredients the product will contain. Neither pictures of lemons nor the color yellow or text stating "Lemon" gives reasonable consumers the

impression that the product contains any particular amount of actual lemon—and surely not the specific expectation of a "non-*de minimis*" amount. It may well have been deceptive if, for example, the packaging depicted lemons and the cookies turned out to be mango-flavored. But a reasonable consumer buys Lemon Snaps expecting lemon-flavored cookies, which is precisely what she gets.

Rudy has identified no "untruths" on the packaging indicating deception. *Floyd v. Pepperidge Farm, Inc.*, No. 21-CV-525-SPM, 2022 WL 203071, at *4 (S.D. Ill. Jan. 24, 2022). Rudy claims that the word "Lemon," combined with a picture of lemons and a yellow background, misleads consumers into believing Lemon Snaps contain a non-*de minimis* amount of lemon ingredients. Similarly, in *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022), the plaintiff alleged that the word "Strawberry," combined with a picture of half of a strawberry and a Pop-Tart oozing red filling, mislead consumers into believing that the product's filling consisted of "only strawberries and/or more strawberries" than had. But in *Chiappetta*, as here, no reasonable consumer could conclude that the seller's representations gave the impression the product would contain a certain amount of one ingredient. *Id.* ("However, no reasonable consumer could conclude that the filling contains a certain amount of strawberries based on the package's images and its use of the term 'Strawberry.'").

The Court might reach a different conclusion if Stauffer had added text such as "Made With Lemon," as in *Korte v. Pinnacle Foods Group, LLC.* No. 17-CV-199-SMY-SCW, 2018 WL 1508855, at *1 (S.D. Ill. Mar. 27, 2018). In *Korte*, a seller of salad dressings sold its product with the label "Made With Extra Virgin Olive Oil." *Id.* Upon learning that the dressing product only contained an admixture of extra virgin olive oil with water and soybean oil, the plaintiff asserted an ICFA claim against the seller defendant. *Id.* at *4. In that case, the court could not conclude, as

a matter of law, what a reasonable consumer would expect in light of the "Made With Extra Virgin Olive Oil" text, despite the ingredient label listing different oils and other ingredients. *Id.* But here, there is no such representation regarding lemons being an ingredient of the cookies.

Finally, Rudy argues that Stauffer's product does not comply with Food and Drug Administration ("FDA") labeling guidelines. This argument, however, is a red herring. Specifically, Rudy asserts that the Lemon Snaps packaging fails to state that the product is "artificially flavored" on the front label and that a front label disclosure is required by 21 C.F.R. § 101.22(i). But FDA regulations are only enforceable by the federal government. 21 U.S.C. § 337(a). And this case is "not about the enforcement of FDA regulations—which, again, lies solely within the purview of the FDA." 2021 WL 5140504, at *4. Instead, it is about whether a reasonable consumer would believe that Lemon Snaps contain actual lemon because of its label.

Given the totality of the information at Rudy's disposal and the lack of representations by Stauffer that Lemon Snaps contain any amount of actual lemon, Rudy fails to plead the first element of an ICFA claim: that Stauffer engaged in a deceptive or unfair practice. Because Rudy fails to plausibly allege that the Lemon Snaps packaging would lead a reasonable consumer to believe that the product contains a non-*de minimis* amount of actual lemon, Stauffer's representations are not misleading as a matter of law. The Court therefore dismissed the ICFA claim.

**B.      Warranty Claims**

Rudy also asserts claims against Stauffer for breach of express warranty and the implied warranty of merchantability, as well as violation of the MMWA. All three claims fail both because Rudy failed to provide notice to Stauffer of the alleged defects prior to bringing suit and on their merits.

### 1.    Pre-Suit Notice

Under Illinois law, a plaintiff must provide notice to a putative defendant before filing suit to bring a claim for breach of express or implied warranty. *See* 810 ILCS 5/2-607(3)(a) ("Where a tender has been accepted[,] the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). Rudy argues that she satisfied the notice requirement by filing this case, citing a case from Indiana applying Tennessee and Michigan law. (Rudy Resp. at 8, Dkt. No. 18 (citing *In re Bridgestone/Firestone, Inc. Tire Prods.*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001).).). But in Illinois, a plaintiff "cannot satisfy the pre-suit notice obligation by filing suit." *Chiappetta*, 2022 WL 602505, at *6. There is one limited exception to the notice requirement: "[o]nly a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996). But Rudy does not allege that she suffered any sort of personal injury due to Stauffer's labeling, so she does not qualify for the *Connick* exception.

Alternatively, Rudy contends that pre-suit notice was not required because Stauffer already had knowledge of the Lemon Snaps's defect. However, knowledge of generalized concerns about a product is not enough; although "it is unnecessary to list specific claims of breach of warranty in giving notice . . . , it is essential that the seller be notified that ***this particular transaction*** is troublesome and must be watched." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 716 (N.D. Ill. 2020). Because Rudy never notified Stauffer of her particular Lemon Snaps purchase, this pre-suit notice requirement was not fulfilled.

In sum, because she failed to adhere to Illinois's notice requirements for breach of warranty claims, her express and implied warranty claims must be dismissed. But even if she had

fulfilled the notice requirement, as discussed below, each of Rudy's claims would still fail as insufficiently pleaded.

## 2.    Express Warranty

To state a claim for breach of express warranty under Illinois law, a plaintiff must allege that the seller "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor*, 477 F. Supp. 3d at 714. In general, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted). And as already discussed, the plaintiff must, within a reasonable time after she discovers or should have discovered the breach, "notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607; *see also Ibarrola*, 83 F. Supp. 3d at 760.

Stauffer's product packaging with the name "Lemon Snaps" and images of the cookies and lemons does not amount to an express warranty that the product contains a certain amount of actual lemon. Simply put, these vague images and text are not enough to establish an affirmation of fact or a promise to consumers. *See Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2022 WL 846603, at *4 (N.D. Ill. Mar. 22, 2022) (finding that the plaintiff stated a claim for breach of express warranty where a pet food manufacturer's dog foods stated that the product was "limited ingredient" and contained no "corn, wheat, soy, or chicken" (internal quotation marks omitted)). Further, though Stauffer's representations might arguably create an express warranty that Lemon Snaps taste like lemon, the express warranty Rudy articulates concerns the quantity of actual lemon found in the product. (Compl. ¶ 71.)

14

For these reasons, Rudy fails to state a claim under an express warranty theory.

### 3. Implied Warranty of Merchantability

Next, Rudy asserts a claim for breach of the implied warranty of merchantability, alleging that the Lemons Snaps she purchased "were not merchantable because [they] w[ere] not fit to pass in the trade as advertised." (Compl. ¶ 76.) To state a claim for breach of the implied warranty of merchantability, "a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015) (internal quotation marks omitted). According to the Illinois Uniform Commercial Code, a merchantable good is one that, among other things, "pass[es] without objection in the trade under the contract description" and "conform[s] to the promises or affirmation of fact made on the container or label if any." 810 ILCS 5/2-314(2). "A warranty of merchantability [] does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *In re 100% Grated Parmesan Cheese*, 275 F. Supp. 3d 928, 929 (N.D. Ill. 2017).

But Rudy's allegation that Lemon Snaps do not contain an appreciable amount of lemon does not indicate that the cookies lack a minimum level of quality. Nor does this allegation equate to Lemon Snaps being objectionable in the trade under their contract description. Rather, Lemon Snaps are fit for the "ordinary purposes for which [they] are used," Ill. Comp. Stat. 5/2-314(2)(c), (e), which is being eaten. Accepting as true Rudy's allegations that the Lemon Snaps contain only a *de minimis* amount of lemon, Rudy does not explain how that would hamper the product's ordinary purpose of use or make Lemon Snaps unfit for human consumption. "A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for

ordinary use," *Wyant v. Dude Prod., Inc.*, No. 21-CV-00682, 2022 WL 621815, at *4 (N.D. Ill. Mar. 3, 2022). Rudy's allegations do not support such an inference, and therefore she does not state a claim under this theory either.

### 4.      MMWA

Rudy also alleges that Stauffer violated the MMWA. The MMWA provides that "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). In effect, the MMWA creates a federal cause of action for state law warranties. *Schiesser v. Ford Motor Co.*, No. 16-CV-00730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016). "[A] cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim." *Id.* at *4; *see also Floyd*, 2022 WL 203071, at *5 ("Since Illinois law prevails and this Court has dismissed both the express and implied warranties for failing to properly allege a state law claim, any MMWA counts are dismissed as well."). Because Rudy has failed to state a claim for breach of an express or implied warranty, her claim for violation of the MMWA fails as well.

### C.      Negligent Misrepresentation

Rudy also asserts a claim against Stauffer for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must allege the following: "(1) a false statement of material fact; (2) defendant's carelessness or negligence in ascertaining the truth of the statement; (3) an intention to induce plaintiffs to act; (4) reasonable reliance on the truth of the statement by plaintiffs; and (5) damage to plaintiffs resulting from this reliance." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1038 (Ill. App. Ct. 2014). Such claims are subject to the *Moorman* doctrine, a creature of Illinois law that "bars recovery in tort for purely economic losses arising out of a

failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567

(7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448–49 (Ill. 1982)).

There is a narrow exception to *Moorman*'s bar on purely economic tort harms "where a

relationship results in something intangible." *Congregation of the Passion, Holy Cross Province

v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994). But this exception applies to "breach[es]

of a professional duty that, because of its intangible nature, cannot be measured in contract

terms." *Martusciello v. JDS Homes, Inc.*, 838 N.E.2d 9, 14 (Ill. App. Ct. 2005). Put differently, to

fall within this exception, the plaintiff must allege damages "proximately caused by a negligent

misrepresentation by a defendant in the business of supplying information for the guidance of

others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title. Guar. Co.*, 843

N.E.2d 327, 333–34 (Ill. 2006).[1]

       Here, Stauffer's supplying of information—if it can be said to have supplied

information—was ancillary to the sale of Lemon Snaps. Stauffer is not in the business of

supplying information, nor do Rudy and Stauffer have a relationship that creates something

intangible. Stauffer is a cookie manufacturer. Because its main business is selling its products and

not supplying information to consumers, Rudy has not alleged that it has a duty to communicate

accurate information. Though Rudy argues that Stauffer held "itself out as having special

knowledge and experience [in] this area" (Compl. ¶ 79), this conclusory allegation does not

satisfy the duty element for negligent misrepresentation. *See Iqbal*, 556 U.S. at 678 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."). Therefore, Rudy's negligent misrepresentation claim is dismissed as well.

---

[1] There are two other *Moorman* exceptions with no relevance here: where a plaintiff sustains "personal injury or property damage" and where damages are proximately caused by fraud. *First Midwest Bank*, 843 N.E.2d at 333.

### D. Fraud

To state a claim for fraud in Illinois, a plaintiff must allege: "'(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill 2022) (quoting *Connick*, 675 N.E.2d at 591). Fraud may be accomplished through omissions of material fact as well false statements. *See Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000). As previously noted, fraud claims are subject to Rule 9(b)'s heightened standard, which requires a plaintiff's complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Rudy does not plead her fraud claim with sufficient particularity for it to survive. Though she alleges what appears on the Lemon Snaps product packaging—the name "Lemon Snaps," a yellow background, images of a stack of cookies and lemons, "Original Recipe," "Quality Since 1871," and the ingredient label (Compl. ¶¶ 5, 10)—she does not state with any specificity what the false statements or omissions of material fact were. Instead, she relies on conclusory allegations such as "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had an appreciable amount of lemon ingredients." (*Id.* ¶ 83.) Rudy's inability to state with particularity whether Stauffer misrepresented or omitted (or both) the cookies' attributes and qualities, or what false or misleading statements Stauffer made, dooms her claim.

Moreover, with respect to Stauffer's knowledge and intent, Rudy alleges only that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent

with its representations." (*Id.* ¶ 84.) This does not meet even Rule 9(b)'s more generous pleading standard allowing knowledge of intent to be alleged generally; it is pure *ipse dixit*. *See Kinman*, 604 F. Supp. 3d at 731. The complaint also alleges that "[Stauffer] received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices." (*Id.* ¶ 75.) At best, however, this allegation speaks to Stauffer's to knowledge; it does not plausibly allege Stauffer's intent.

For these reasons, Rudy's fraud claim is dismissed as well.

### E.    Unjust Enrichment

Finally, Rudy asserts a claim for unjust enrichment. To state a claim for unjust enrichment, "'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Cleary*, 656 F.3d at 517. In other words, though an "unjust enrichment claim may be pursued as an independent cause of action, where the claim rests on the same improper conduct alleged in another claim, it will stand or fall with the related claim. *O'Connor*, 477 F. Supp. 3d at 720.

Rudy admits that her unjust enrichment claim is predicated on the success of her other claims. Therefore, because Rudy has failed to state a claim under the ICFA and her common law theories, she also fails to state a claim for unjust enrichment.

19

## CONCLUSION

For the reasons stated above, Stauffer's motion to transfer venue (Dkt. No. 11) is denied and its motion to dismiss (Dkt. No. 9) is granted.

ENTERED:

Dated:  March 30, 2023

_____
Andrea R. Wood
United States District Judge